An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-141

Filed 17 September 2025

Randolph County, No. 24 JT 000069

IN THE MATTER OF:

L.H.M.

A Minor Juvenile

Appeal by respondent-father from order entered 31 October 2024 by Judge Scott C. Etheridge in Randolph County District Court. Heard in the Court of Appeals 6 August 2025.

> *Batch, Poore & Williams, PC, by Sydney J. Batch, for respondent-appellant father.*
>
> *No brief filed for petitioner-appellee mother.*
>
> *No brief filed for Guardian ad Litem.*

PER CURIAM.

Respondent-father appeals from an order terminating his parental rights to L.H.M. ("Larry").[1] On appeal, respondent-father's counsel filed a no-merit brief

---

[1] A pseudonym is used to protect the identity of the juvenile.

under Rule 3.1(e) of North Carolina Rules of Appellate Procedure. Under Rule 3.1(e), counsel filing a no-merit brief is required to "identify any issues in the record on appeal that arguably support the appeal and must state why those issues lack merit or would not alter the ultimate result." N.C. R. App. P. 3.1(e). After careful review of the issues counsel has identified, we affirm the order terminating respondent-father's parental rights. *See In re L.E.M.,* 372 N.C. 396, 403 (2019) ("Based upon our careful review of the issues identified in the no-merit brief in light of our consideration of the entire record . . . we affirm the trial court's order terminating respondent's parental rights.").

## I.    Factual and Procedural Background

Larry was born in March 2012. Petitioner-mother and respondent-father, Larry's biological mother and father, were never married. Larry has resided exclusively with petitioner-mother since birth.

On 3 September 2019 petitioner-mother and respondent-father were involved in a consent custody case involving Larry. This case resulted in an order granting respondent-father the right to visit Larry under supervision. However, the order provided that visitation with Larry would cease if respondent-father failed to exercise it. After six months passed in which he did not see Larry, respondent-father's visitation rights were terminated. He did not attempt to renew his visitation rights.

On 29 May 2024 petitioner-mother filed a petition to terminate respondent-father's parental rights. The trial court held a hearing on the petition on 9 September

2024. During the adjudication phase of the hearing, the trial court heard testimony from petitioner-mother, who testified that respondent-father had not seen or contacted Larry since 2019.

During the dispositional phase of the hearing, the trial court considered the testimony of petitioner-mother, Larry's maternal grandfather, and respondent-father, as well as the report and testimony of the guardian ad litem ("GAL"). The GAL testified to Larry's lack of relationship with respondent-father and his strong relationship with petitioner-mother's husband. The GAL testified that it was in Larry's best interest for the trial court to terminate respondent-father's parental rights.

Petitioner-mother testified to the lack of communication and visitation between Larry and respondent-father from 2019 to 2024. She told the trial court that her husband planned to adopt Larry, and that the two had a close relationship. Larry's grandfather testified to the same.

Finally, respondent-father testified that he was Larry's father and that he had been with Larry as much as he was able. During cross-examination, respondent-father confirmed that he had not seen or contacted Larry, or three of his other children, for five years. After the hearing, the trial court entered an order terminating respondent-father's parental rights, concluding that petitioner-mother had proved by clear, cogent, and convincing evidence that grounds existed to terminate respondent-father's rights under subsection 7B-1111(a)(7) of our General

Statutes and that such termination would be in Larry's best interest  Respondent-father timely appealed.

## II.    Jurisdiction

This Court has jurisdiction to review any "order that terminates parental rights or denies a petition or motion to terminate parental rights."  N.C.G.S. § 7B-1001(a)(7) (2023). Therefore, we have jurisdiction to review the trial court's order terminating respondent-father's parental rights.

## III.    Standard of Review

"We review a district court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusion of law."  *In re J.S.*, 374 N.C. 811, 814 (2020) (cleaned up).  "Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal."  *Id.*  "The issue of whether a trial court's findings of fact support its conclusion of law is reviewed de novo," and "an adjudication of any single ground for terminating a parent's rights . . . will suffice to support a termination order."  *Id.* at 814–815.  During the dispositional phase of the hearing, "[t]he court's determination of the juvenile's best interest will not be disturbed absent a showing of an abuse of discretion."  *In re E.M.*, 202 N.C. App. 761, 764 (2010) (citation omitted).

## IV.    Discussion

We are satisfied that counsel fully complied with all the requirements of Rule

3.1(e) and identified two issues for our independent review: (1) whether the trial court erred in terminating Father's parental rights based on abandonment and (2) whether the trial court abused its discretion by concluding that Father's termination of parental rights was in the best interests of the child. *In re L.E.M.*, 372 N.C. at 402 (2019).

## A. Adjudication

A trial court may terminate an individual's parental rights when the court finds the parent has "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7). "Although the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the determinative period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re E.B.*, 375 N.C. 310, 318 (2020). When "a parent withholds his presence, his love, his care, the opportunity to display filial affection, and neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re C.J.H.*, 240 N.C. App. 489, 504 (2015).

Here, based on its factual findings, the trial court concluded that grounds existed to terminate respondent-father's parental rights under subsection 7B-1111(a)(7). The trial court found respondent-father "has had no contact with the minor child in approximately four (4) years . . . has not visited with, or spoken to, the minor child since approximately 2019," and is "a stranger to the minor child  Though

these findings are unchallenged, we note they are supported by competent evidence, specifically the testimony of the GAL, petitioner-mother, Larry's grandfather, and respondent-father. These binding factual findings readily support a conclusion that respondent-father "with[held] his presence, his love, his care, the opportunity to display filial affection, and neglect[ed] to lend support and maintenance," *In re C.J.H.*, 240 N.C. App. at 504, and the trial court therefore did not err in concluding respondent-father's parental rights were subject to termination under subsection 7B-1111(a)(7).

**B. Disposition**

Respondent-father's counsel also raised the issue of whether the trial court abused its discretion in determining it was in Larry's best interest to terminate respondent-father's parental rights. "At the dispositional stage of a termination proceeding, the trial court must 'determine whether terminating the parent's rights is in the juvenile's best interest.'" *In re J.S.*, 374 N.C. at 821–822 (quoting N.C.G.S. § 7B-1110(a) (2019)).

The trial court must use the following criteria, as relevant, and document written findings of fact when considering the best interests of a juvenile child;

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2023).

"The trial court's dispositional findings are binding on appeal if supported by any competent evidence." *In re J.S.*, 374 N.C. at 822. When the trial court has determined "a child's best interests under N.C.G.S. § 7B-1110(a) [it] is reviewed only for abuse of discretion." *Id.* "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

Here, the trial court found

> a. The minor child will soon be turning thirteen (13) years old and has been in the care of Petitioner exclusively since birth.
>
> b. The minor child is currently in the seventh (7th) grade;
>
> c. Petitioner married her current husband [and they] have been married for several years. Both Petitioner and the minor child knew Petitioner's husband for several years prior to their marriage. Petitioner and her husband share a home with the minor child.
>
> d. Petitioner's current husband wishes to adopt the minor child, and it is highly likely that he will be able to do so. Petitioner's husband is ready, willing, and able to adopt the minor child as soon as possible. Petitioner's Husband serves as a father figure for the minor child, as confirmed by both Petitioner and the maternal

grandfather of the minor child, Andy Powers .

e. Termination of Respondent Father's parental rights would further a permanent plan of care for the minor child.

f. The minor child has no bond with Respondent Father. Petitioner's current husband has served in a father figure role for the minor child for quite some time, and the minor child will sometimes refer to him as "Dad."

g. All of the minor child's needs are being met while in Petitioner's care.

h. Petitioner was employed full time up until October 2022 when she was forced to leave employment due to health issues, however, Petitioner's husband is employed full time. Petitioner and her husband are capable of providing the needs of the minor child, both now and moving forward.

i. The conduct of Respondent Father has been such as to demonstrate that he will not promote the health and orderly, physical and emotional growth of the minor child.

Thus, the trial court entered several written, well-supported findings of fact addressing each of the five required statutory factors under N.C.G.S. § 7B-1110(a). In light of the evidence presented, the entirety of the record, and the hearing transcript, we conclude that the trial court did not abuse its discretion in determining that termination of respondent-father's parental rights was in Larry's best interest.

## V. Conclusion

We have reviewed the issues raised by respondent-father's counsel and "are satisfied that the trial court's order terminating [respondent-father]'s parental rights

is supported by clear, cogent, and convincing evidence and is based on proper legal grounds." *In re K.M.S.*, 380 N.C. 56, 59 (2022). Accordingly, we affirm the trial court's order terminating respondent-father's parental rights.

AFFIRMED.

Panel consisting of Judges COLLINS, HAMPSON, and FREEMAN.

Report per Rule 30(e).